In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2694

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RICHARD REED,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-CR-30065--Richard Mills, Judge.

ARGUED MARCH 2, 2001--DECIDED November 30, 2001


   Before CUDAHY, EASTERBROOK, and ROVNER,
Circuit Judges.

   ROVNER, Circuit Judge.  A jury found
Richard Reed guilty of the manufacture of
methamphetamine and the district court
sentenced him to 168 months in prison. At
the trial, the court allowed into
evidence incriminatory statements that
Reed made to Illinois State Police
Officer Carl Carpenter during pre-trial
interrogation. Although the government
had agreed to provide Reed with
conditional immunity as to the direct use
of his statements, the court found that
Reed had breached the agreement by lying.
Reed appeals his conviction, contending
that the district court clearly erred in
concluding that Reed materially breached
the immunity agreement and that the
admission of his statements was
prejudicial. We conclude that the
district court committed no clear error
in holding that Reed materially breached
the agreement. The admission of Reed's
statements to Officer Carpenter was
therefore proper, and we affirm Reed's
conviction.

I.

   Richard Reed lived in Pana, Illinois,
where he manufactured methamphetamine in
his home. On May 18, 1999, law
enforcement agents searched his residence

and confiscated several items needed for the production of this drug, including: filters, large numbers of pseudoephedrine tablets (a precursor to methamphetamine), a rubber hose with a brass fitting that had been in contact with another precursor chemical, and glass objects that contained liquid methamphetamine. During a post-search interview, Reed admitted to being involved in the manufacture and distribution of methamphetamine and identified several of the objects that had been seized. Approximately eleven weeks after the search, a grand jury returned a one-count indictment against Reed charging him with manufacturing methamphetamine in violation of 21 U.S.C. sec.sec. 841(a)(1) and 841(b)(1)(B). Shortly thereafter, Reed was arrested on the federal charge while he was in state custody at the Macon County Jail in Decatur.

While in custody and after conferring with his attorney, Reed entered into a conditional direct use immunity agreement with the government. This agreement prohibited the government from using any of Reed's statements as direct evidence against him so long as he provided the authorities with "complete and truthful information." The agreement provided, inter alia:

1. The government agrees that no statement made or information provided pursuant to this agreement may be used directly as evidence against you in any criminal case . . . .

2. In return, you agree that you will provide complete and truthful information to law enforcement officials regarding your criminal conduct and everything you know or have reason to believe about the criminal conduct of others. . . .

* * *
4. You further acknowledge and agree that the government's grant of use immunity herein is entirely conditioned upon your complete compliance with paragraph[ ] 2 . . . . Should you knowingly make any materially false statement or omission in providing information under this agreement, the government will be entitled to use your statements and evidence you provide, directly and indirectly, to institute and support a criminal prosecution for any offense . .

. .

5. [Y]ou must neither conceal [n]or minimize your own actions or involvement in any offense, nor conceal, minimize, fabricate, or exaggerate anyone else's actions or involvement in any offense. You must be completely truthful about the facts whatever those may be.

* * *

11. Any material breach of any provision of this agreement by you will void this agreement in its entirety and will release the government from any obligation under this agreement.

R.30, Ex. A at 1-2 (emphasis in original).

After Reed entered into the agreement, he was interviewed by Officer Carpenter. During the interview, Reed made a number of statements inculpating himself in the manufacture of methamphetamine. However, Reed also stated, among other things, that he had not manufactured methamphetamine in three months, that he had not been staying at the residence of George Diggs in Decatur, Illinois, and that he did not have any knowledge of nor was involved in any way with the manufacture of methamphetamine at Diggs' home. Officer Carpenter knew the latter statements were false based on prior interviews with other potential witnesses.

During Reed's appearance at a pre-trial hearing, the Assistant United States Attorney ("AUSA") advised Reed and his attorney that because Reed had violated the immuni-ty agreement by providing false information to Officer Carpenter, the government planned to use Reed's statements against him at trial. The AUSA repeated his statements at another hearing a few weeks later. Neither Reed nor his counsel made any attempt to contact the AUSA regarding this issue. Similarly, the government did not initiate further discussion with Reed or his attorney regarding this issue. In November of 1999, the district court granted Reed's motion to replace his counsel. The AUSA subsequently notified Reed's new attorney that Reed had violated the immunity agreement and that the government planned on using Reed's

statements against him in court.

On December 29, 1999, Reed filed a motion in limine to exclude from trial the inculpatory statements he had made to Officer Carpenter. Reed never claimed not to have lied to Officer Carpenter, but rather argued that the government was "reneging on the cooperation agreement simply because the Defendant ha[d] refused to plead guilty and [wa]s putting the Government through the burden of preparing for trial." R. 30 at 2. In response to this motion, the government elaborated on Reed's falsehoods and further noted that Reed had failed to make any good-faith effort to rectify his relationship with the government and satisfy the conditions of the immunity agreement. R. 85 at 93-94.

At trial, the court held an evidentiary hearing outside of the jury's presence to determine whether Reed had, in fact, breached the immunity agreement. Officer Carpenter testified to the details of his interview with Reed. Carpenter explained that prior to his interview with Reed, he had interviewed a potential witness, Annette Rafeeny, in anticipation of obtaining a search warrant for the Diggs residence in Decatur. During this interview, he obtained evidence of Reed's involvement and activities with Diggs. Carpenter went on to describe the search of the Diggs residence and the various items seized from the methamphetamine lab in the home. Carpenter used the information he had gathered in the Rafeeny interview and the Diggs search as a litmus test for truth-telling during his interview with Reed. Specifically, Carpenter posed questions to Reed to which he already knew the correct answers in order to determine whether Reed was being honest. Carpenter explained that he did not know what Reed's response to the questions would be before he asked them, but once answered, he knew that Reed was lying about his involvement in the manufacture of methamphetamine at the Diggs residence. Carpenter also testified that the purpose of Reed's immunityagreement was to further the investigation, but that Reed had provided no information that aided the government's inquiry. R. 85 at 63-95.

Reed argued that his false statements did not amount to a material breach of

the use immunity agreement. He reasoned that because Carpenter knew he was lying, none of his lies had caused the government to waste resources chasing down false leads or had otherwise hampered the government's investigation. Indeed, in Reed's view, it was inappropriate for the government to seek release from the immunity agreement based on lies that he told in response to questions designed solely to test his veracity rather than to elicit substantive information in pursuit of the government's investigation.

Alternatively, Reed contended that even if his lies did constitute a breach of the immunity agreement, the government nonetheless should not be permitted to use his inculpatory statements at trial. Because the prosecution had abundant other evidence of his guilt, Reed argued, the statements he had made pursuant to the immunity agreement were cumulative, and the government had no genuine need to use them. "I think you could rule that my client violated the cooperation agreement and you probably will be . . . upheld on appeal," Reed's counsel conceded. R. 85 at 99. "But, I just don't see where all this is necessary." Id.

Judge Mills concluded that Reed had breached the immunity agreement and that, consequently, the government was free to use Reed's statements against him. "There's no question that [Reed] violated his cooperation agreement with the government," the judge found. R. 85 at 102. The terms of that agreement were straightforward, and proof that Reed had given false information was sufficient to establish a breach of Reed's duty of candor. See id. "[I]t's clear, it's clear that he's lied." Id. Judge Mills also acknowledged that the government might be able to make its case against Reed without eliciting the statements that Reed had made to Carpenter, but the judge did not find that possibility a sufficient basis on which to exclude the statements. "Now [the prosecutor] may agree with you that it's cumulative or that he can get in everything else and he doesn't really need this," the judge observed. Id. at 101. "But we can't second-guess him. This is his decision to make as to how he wants to present the case . . . before the jury." Id. at 101-02.

Officer Carpenter subsequently took the witness stand before the jury. The government established that Carpenter had interviewed Reed at the Macon County jail and that Reed had made a number of statements acknowledging his participation in the manufacture of methamphetamine.

At the conclusion of a two-day trial, the jury convicted Reed.

II.

Reed contends that the district court erred in finding that he committed a material breach of the use immunityagreement. We review the factual determination that Reed failed to comply with his obligations under the immunity agreement for clear error. See United States v. Meyer, 157 F.3d 1067, 1078 (7th Cir. 1998). "We will reverse only if, after a comprehensive review of the evidence, we are left with 'the definite and firm conviction that a mistake has been made.'" Id., quoting United States v. Duguay, 93 F.3d 346, 349 (7th Cir. 1996). There is no dispute that Reed lied to Officer Carpenter. He argues only that his lies were immaterial because Carpenter knew that he was lying and therefore his lies did not affect the government's investigation.

A.

A proffer agreement, such as the one at issue here, is considered to be a contract. Therefore, it must be enforced according to its terms. United States v. Lopez, 222 F.3d 428, 434 (7th Cir. 2000), cert. denied, 121 S. Ct. 1601 (2001). Ac cording to the exact terms of the agreement, Reed was to provide the government with "complete and truthful information . . . regarding [his] criminal conduct and everything [he] kn[e]w . . . about the criminal conduct of others." R. 30, Ex. A at 1 para. 2 (emphasis in original). Reed was instructed to "be completely truthful about the facts whatever those may be." Id. at 2 para. 5 (emphasis added). Finally, Reed was warned in the agreement that "[a]ny material breach of any provision . . . w[ould] void th[e] agreement in its entirety and w[ould] release the government from any

obligation under th[e] agreement." Id. para. 11.

Reed violated his immunity agreement when he told Officer Carpenter that he knew nothing of and was not involved in the manufacture of methamphetamine at the Diggs residence in Decatur. Reed was clearly not being "completely truthful about the facts" in accordance with the agreement. When Reed failed to disclose his activities at the Diggs residence he "conceal[ed] or minimiz[ed] [his] own ac tions or involvement in any offense," in direct violation of paragraph 5 of the agreement. See Lopez at 434. Reed's assertion that he knew nothing about the activities occurring at the Diggs residence also can be interpreted as an attempt to deflect suspicion away from another suspect (Diggs), an attempt that was contrary to the very purpose of the immunity agreement as well as the express terms of paragraph 5, which also forbade him from "conceal[ing] [or] minimiz[ing] . . . anyone else's actions or involvement in any offense."

Moreover, after being repeatedly notified that Reed's lies were being considered by the government to be a material breach of the agreement, neither Reed nor his attorney made any attempt to rectify the situation and disclose the complete truth before trial. Reed's falsehoods and the absence of an effort to remedy them, indeed, his display of utter apathy in cooperating with the government at all, constituted an unambiguous violation of his agreement. See United States v. Mattison, 153 F.3d 406, 412 (7th Cir. 1998); Lopez at 434. The violation rendered the agreement null and void as per paragraph 11 and destroyed any use immunity that Reed otherwise might have enjoyed vis a vis the statements that inculpated him.

B.

Reed contends that his lies were immaterial because Officer Carpenter knew he was lying, and consequently, his lies had no effect on the government's investigation. Reed relies on a Sixth Circuit case in which the court concluded that a defendant's lies during interrogation did not constitute a "substantial material breach" of a transactional immunity agreement. United

States v. Fitch, 964 F.2d 571, 575 (6th Cir. 1992). Reed misinterprets Fitch, however. The fact that his deceptions did not derail the government's investigation does not render them immaterial.

What was key to the Sixth Circuit's decision in Fitch was that the defendant's lies did not deprive the government of the benefit of the immunity agreement. Like Reed, Fitch provided false information to the government after entering into an immunity agreement; and just as in this case, government agents were not misled by Fitch's lies. But so far as the record in Fitch revealed, the defendant's lies amounted to nothing more than a minimization of his own involvement in the crime. See id. at 575. Fitch had otherwise furthered the government's investigation considerably; in fact, "Fitch supplied the government with enough information to allow it to secure a multi-count indictment against numerous individuals . . . [and] assisted the investigation in various other ways." Id. In light of the substantial assistance that Fitch had given the government, the court concluded that "the government received the benefit of its bargain" and that the immunity agreement should therefore be enforced. Id. Fitch, of course, is not binding on this court; but even as persuasive authority Fitch does not suggest that the district court clearly erred in finding that Reed breached his agreement with the government.

Contrary to Reed's assertions, the court in Fitch did not rule as it did simply because the lies that the defendant had told turned out to be benign. The harmlessness of his statements was but one factor in the Sixth Circuit's analysis of the asserted breach. Unlike the instant case, the government in Fitch was able to use other information provided by the defendant to further the investigation. By contrast, not only did Reed seek to minimize his own wrongdoing, but he also attempted to avert the government's suspicions from Diggs. Reed's violation thus denied the government the very benefit that the agreement was intended to secure-- information that would aid in the identification and prosecution of other methamphetamine traffickers. Reed'sagreement, intended to be

representative of a symbiotic relationship between a defendant and the government, had beenreduced to a useless piece of paper that served only one of its parties. Even applying the Fitch analysis, Reed materially breached his immunity agreement.

Additionally, the immunity agreement in Fitch provided no remedy for the government in the event that the defendant breached the agreement. 964 F.2d at 575. The court in Fitch held that even if there had been a breach in the agreement, the government would have been "limited to those remedies specified in the agreement." Id.; see also id. at 576.

Reed's agreement, unlike the one in Fitch, expressly provided for its nullification in the event of a breach. R. 30, Ex. A at 2 para. 11. Because Reed's agreement specifically provided for that remedy, upon Reed's breach, the government was not obligated to provide Reed with immunity. Once the district court determined that the agreement had been violated, then, the government was free to use Reed's statements against him at trial.

III.

We hold that the district court did not clearly err in finding that Reed materially breached his immunity agreement. That holding makes it unnecessary for us to address Reed's other arguments. Reed's conviction is AFFIRMED.