**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0739n.06
Filed: October 5, 2006

**No. 05-1425**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **LONNIE McKISSIC**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioner-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| **v.** | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **THOMAS BIRKETT, Warden**, | ) | **O P I N I O N** |
| | ) | |
| *Respondent-Appellee.* | ) | |

**BEFORE:** **DAUGHTREY, COLE, and GIBBONS, Circuit Judges.**

**R. GUY COLE, JR., Circuit Judge.** Petitioner-Appellant Lonnie McKissic appeals the district court's dismissal of his petition for habeas corpus relief under 28 U.S.C. § 2254. McKissic was convicted in Michigan state court of various drug-related charges, and he challenges his conviction on four grounds: (1) he was immune from prosecution because of a Michigan immunity statute and an earlier plea agreement with federal prosecutors regarding the drug-related conduct; (2) the State waited five years to prosecute him, violating his right to be free of prejudicial pre-indictment delay; (3) the State engaged in prosecutorial misconduct by introducing several witnesses' plea agreements into evidence; and (4) given his federal plea agreement, his conviction violates double-jeopardy principles. For the reasons that follow, we **AFFIRM** the district court's order dismissing McKissic's petition for habeas corpus relief.

## I. BACKGROUND

In February 1994, McKissic was indicted in federal court on drug-trafficking and money-laundering charges. In June 1994, McKissic reached a plea agreement with the federal prosecutor. The agreement called for McKissic to plead guilty to the money-laundering charge and cooperate with law-enforcement agencies in their investigation of past crimes. This cooperation required McKissic to give truthful answers to all investigators' questions and provide truthful testimony at grand juries and trials. In return for McKissic's cooperation, the federal prosecutor agreed to dismiss the other pending charges against McKissic, not to bring additional charges against him related to the underlying drug trafficking, and to make certain sentencing recommendations in his favor. In August 1994, McKissic pleaded guilty to the money-laundering charge and, after the prosecutor's recommendation of a downward departure, was sentenced to nine years in federal prison.

On February 29, 1995, in accordance with his plea agreement, McKissic testified at Thomas Patrick's grand-jury proceedings in Michigan state court. McKissic's testimony implicated Patrick and himself in the sales of large amounts of cocaine. In November 1995, however, McKissic testified at Patrick's preliminary examination that Patrick was not involved in any drug sales. McKissic then offered similar testimony at Patrick's trial. The federal prosecutor deemed McKissic's contradictory testimony a failure to cooperate under the federal plea agreement, and, in January 1996, the prosecutor moved to withdraw the downward departure in McKissic's sentence.

In April 1998, the State charged McKissic in state court with perjury and various drug-trafficking offenses related to the same conduct underlying the earlier federal charges against him.

The state drug-trafficking charges involved delivery, possession, and conspiracy to deliver more than 650 grams of cocaine. Following a bench trial on the drug charges,[1] McKissic was convicted of each charge. On November 9, 1999, McKissic was sentenced as a four-time habitual offender to consecutive prison terms on each charge, for a total term of 70 to 110 years.

McKissic then appealed to the Michigan Court of Appeals, which affirmed his conviction and sentence. The Michigan Supreme Court denied his application for leave to appeal. McKissic filed a petition in the district court for habeas corpus relief under 28 U.S.C. § 2254, raising variations of the claims he brought in state court. The district court dismissed McKissic's petition with prejudice and declined to issue a certificate of appealability. This Court then granted McKissic a certificate of appealability on the four issues he raises in this appeal.

## II. DISCUSSION

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 04-321, 110 Stat. 1214 ("AEDPA"), applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because McKissic filed his petition after the effective date, AEDPA's provisions govern this Court's review of his claims. *See Gillard v. Mitchell*, 445 F.3d 883, 889 (6th Cir. 2006). Under AEDPA, a petition for a writ of habeas corpus shall not be granted with respect to any claim adjudicated on the merits in state-court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

---

[1]The State brought the perjury charge in a separate proceeding, and it is not a subject of McKissic's habeas petition or appeal to this Court.

federal law as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d) (2006).

A state court's determination of a habeas petitioner's claim is "contrary to" clearly established federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state-court decision is an "unreasonable application" of clearly established law if it (1) correctly identifies the legal rule from a Supreme Court case but unreasonably applies that rule to the facts of the particular case, or (2) either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407.

This Court reviews the state court's factual findings with extreme deference. "A federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption." *Johnson v. Luoma*, 425 F.3d 318, 324 (6th Cir. 2005) (quoting *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004)).

**B. McKissic's Claims**

1. <u>Immunity</u>

McKissic argues that he had immunity from the State's prosecution of the drug transactions he testified to in Patrick's legal proceedings and that his conviction therefore violates his

constitutional right to be free from compelled self-incrimination. McKissic asserts that his immunity arises from two sources: (a) a Michigan statute, Mich. Comp. Laws § 750.157 (1931), which provides for transactional immunity under certain conditions; and (b) his plea agreement with federal prosecutors. These are addressed in turn.

(a) *Michigan Transactional-Immunity Statute*

The Michigan transactional-immunity clause in effect when McKissic testified at Patrick's grand-jury proceeding in 1999 provided in relevant part as follows:

> No person shall be excused from attending and testifying . . . upon any investigation, proceeding or trial, for a violation of any of the provisions of this chapter [regarding criminal conspiracies], . . . for the reason that the testimony . . . required of him may tend to degrade or incriminate him; but no person shall be prosecuted or subjected to any penalty . . . on account of any . . . matter . . . concerning [that] which he may so testify . . . , and no testimony so given . . . shall be received against him upon any criminal investigation, proceeding or trial[;] provided, [t]hat no person so testifying shall be exempt from federal prosecution and punishment for perjury committed in so testifying.

Mich. Comp. Laws § 750.157, *amended by* 1999 PA No. 251 (1999). In other words, under the statute, a person may not refuse to testify in a proceeding related to a criminal conspiracy by invoking his or her right against self incrimination; at the same time, that person cannot be prosecuted for crimes (except for perjury) related to the testimony he or she provides. The statute thus provides for transactional immunity (which precludes prosecution for any event to which the person testifies) and not simply use immunity (which precludes only the use of the person's statements in a prosecution against the person). *See, e.g., United States v. Fitch*, 964 F.2d 571, 575-76 (6th Cir. 1992) ("Transactional immunity is full immunity from prosecution for any offense to which the testimony relates," and it "prohibits the government from prosecuting the defendant at any

time with respect to incriminating matters that the witness disclosed.") (citations omitted). McKissic argues that his testimony at Patrick's grand-jury proceedings falls under this statute and entitled him to transactional immunity, thus precluding prosecution for crimes relating to the drug-related conduct to which he testified. The Michigan Court of Appeals rejected this argument, concluding that the statute did not apply for two reasons.

First, the Michigan court explained that the statute provides immunity when the testimony at issue is "required" of the person. *People v. McKissic* (*McKissic I*), No. 224965, 2002 WL 408930, at *1 (Mich. Ct. App. Mar. 15, 2002). Because McKissic testified before Patrick's grand jury in accordance with his federal plea agreement, which he voluntarily entered into, the court concluded that his testimony was not required: "Voluntary cooperation in accordance with the terms of a plea agreement is not required testimony." *Id.* (citing *United States v. Camp*, 72 F.3d 759, 761 (9th Cir. 1995)).

McKissic objects to this holding on two grounds. First, based on an amendment to the statute, he contends that he is entitled to immunity even if his testimony was not compulsory. The statute was significantly amended in 1999 to provide use immunity instead of transactional immunity. The amended version referred to the applicable testimony as "required," but also as "compelled."[2] McKissic argues that because the word "compelled" did not appear in the earlier

---

[2]The relevant section of the amended version of the statute provides as follows:

> A person shall not be excused from . . . testifying . . . before a court . . . upon an investigation, proceeding, or trial for a violation of this chapter on the ground that the testimony or evidence may tend to degrade or incriminate the person. Truthful testimony . . . *compelled* under this section and any information derived directly or

(applicable) version, testimony need not be "compelled" for immunity to apply. Thus, he suggests, the testimony he offered in accordance with his plea agreement — even if that testimony was not compelled — entitled him to immunity. Even assuming there is a difference between "required" and "compelled" testimony,[3] however, McKissic does not dispute that the applicable version of the statute provides immunity where the testimony is "required," and he offers no basis to suggest the Michigan court's determination that his testimony was not "required" was contrary to, or an unreasonable application of, United States Supreme Court precedent. His argument is therefore without merit.

Second, McKissic argues that even if the statute applies to "required" testimony, he is still entitled to immunity because his testimony was not voluntary, but "required" by his federal plea agreement. Yet McKissic acknowledges that he voluntarily entered into the agreement, and he fails to offer any authority that testimony offered in accordance with a voluntary plea agreement (as opposed to, for example, testimony offered in response to a court order) is "required" within the

---

indirectly from that truthful testimony . . . shall not be used against the witness in a criminal case, except for impeachment purposes or in a prosecution for perjury or otherwise failing to testify . . . as *required*.

Mich. Comp. Laws § 750.157 (1999) (emphasis added).

[3]We think there is no difference between "compelled" and "required" in this context. If the legislature intended "compelled" testimony to mean something other than "required" testimony, it likely would not have continued to use the word "required" (in addition to "compelled") when describing the testimony in the amended version. *See* Mich. Comp. Laws § 750.157 (1999), *supra* n.2. Moreover, the amendment did not amount to simply replacing one word for another (in which case the difference might be meaningful); rather, the amendment amounted to a significant overhaul of the statutory text (to repeal transactional immunity and provide use immunity).

meaning of the statute. We agree with the district court that the Michigan court's conclusion was not contrary to, or an unreasonable application of, United States Supreme Court precedent.

McKissic further argues that the state prosecutor compelled McKissic's testimony by making the following statement to him before he testified at Patrick's grand-jury proceeding: "With respect to the testimony that you give before this grand jury, nothing you say in that testimony will be used against you unless we find at some future time that you have lied before this grand jury." But this statement merely reiterated that McKissic was about to testify in accordance with his *voluntary* federal plea agreement. Immediately before making this statement, the prosecutor stated to McKissic that he was at Patrick's grand-jury proceedings "as part of a plea agreement with the federal authorities to testify before this grand jury," and McKissic indicated that was precisely the case. (*Id.* at 24, 26.) The prosecutor's statement does not change that McKissic voluntarily entered into the agreement. This argument is therefore also without merit.

The Michigan court's second reason for not applying the statute was McKissic's failure to invoke his right against self-incrimination before the grand jury, as he was required to do to avail himself of the statute. *See McKissic I*, 2002 WL 408930, at *2 ("[P]ersons are not entitled to statutory transactional immunity unless they raise their constitutional privilege against self-incrimination or object to answering questions having the tendency to incriminate.") (citing *People v. Parsons*, 371 N.W.2d 440, 445 (Mich. Ct. App. 1985)). In light of our determination that McKissic's testimony was not "required" and therefore does not receive the protections of the transactional-immunity statute, we need not reach the question whether McKissic needed to invoke his right against self-incrimination and whether he failed to do so.

(b)  *Federal Plea Agreement*

McKissic also argues that the prosecutor's statement to him at Patrick's grand-jury proceeding "acted as an immunity agreement."  Because this statement amounted to the prosecutor merely reiterating that the forthcoming testimony was in accordance with the plea agreement, we understand McKissic to be arguing that, in addition to violating the Michigan statute, his prosecution violates his federal plea agreement.

Due process requires the government to adhere to the terms of any immunity agreement it makes.  *United States v. Fitch*, 964 F.2d 571, 576 (6th Cir. 1992) (citing *United States v. Pelletier*, 898 F.2d 297, 302 (2d Cir. 1990)).  If there is a breach of the immunity agreement, which is akin to a contract, the available remedies are those specified in the contract.  *Id*. (citations omitted).  We must first determine whether McKissic materially breached the agreement; if he did, we must then determine the remedies available to the government.

In *Fitch*, this Court affirmed the district court's ruling that the defendant did not materially breach his plea agreement.  The defendant agreed to provide truthful information to the government in exchange for immunity, but then made contradictory statements to authorities that minimized his own involvement in criminal activity.  *Id.* at 575.  The defendant, however, assisted the government in securing indictments against other individuals.  *Id.*  Thus, this Court held that the defendant did not materially breach the agreement because "the government received the benefit of its bargain." *Id.*

The Seventh Circuit illustrated the limits of *Fitch* in *United States v. Reed*, 272 F.3d 950 (7th Cir. 2001).  Just as in *Fitch*, the defendant in *Reed* provided false information to the government

after entering into an immunity agreement. *See id.* at 954. The *Reed* court explained, however, that "[u]nlike the instant case, the government in *Fitch* was able to use other information provided by the defendant to further the investigation." *Id.* at 955. "By contrast," the court continued, "not only did Reed seek to minimize his own wrongdoing, but he also attempted to avert the government's suspicions from [another defendant]." *Id.* In this way, the court explained, "Reed's violation thus denied the government the very benefit that the agreement was intended to secure — information that would aid in the identification and prosecution of other [drug] traffickers." *Id.*

Just like the defendant's false statements in *Reed*, McKissic's contradictory testimony about Patrick was a material breach of the plea agreement. Unlike *Fitch*, in which the defendant — notwithstanding his falsehoods — still "supplied the government with enough information to allow it to secure a multicount indictment against numerous individuals" and "also assisted the government in various other ways," *Fitch*, 964 F.2d at 575, McKissic, like the defendant in *Reed*, provided information that would only hinder the prosecution of other individuals.

Having determined that McKissic materially breached the agreement, we turn to what remedy is available to the government. This Court in *Fitch* explained that even if there were a material breach of the immunity agreement, the government would be "limited to those remedies specified in the agreement." *Id.* at 575. Noting that although "there is caselaw that suggests that an immunity agreement is void upon the defendant's breach," we explained that "the courts have so held only where the agreement explicitly provided that any falsehood would void the agreement . . . or where the agreement was silent as to remedies." *Id.* at 576 (citations omitted). Because the immunity agreement in *Fitch* "did not provide that it would be 'null and void' in the event [the defendant] lied,

nor was it silent as to the consequences to [the defendant] of telling a lie," and instead provided that the defendant could be prosecuted for perjury only, the government was bound by that provision. *Id.* McKissic's plea agreement, on the other hand, expressly provided that it "shall be considered null and void" if McKissic breached and the government elected to terminate the agreement. The State therefore had authority to prosecute him for the underlying offenses. *Cf. Reed*, 272 F.3d at 955 (immunity agreement, "unlike the one in *Fitch*, expressly provided for its nullification in the event of a breach," so prosecution for underlying crimes was proper).

### 2. Pre-Indictment Delay

McKissic next argues that his conviction is unconstitutional due to pre-indictment delay. McKissic asserts that although he was not charged with state crimes until April 1998, the State knew about his involvement in the cocaine-distribution network as early as 1994. In particular, McKissic argues that he was unable to mount an alibi defense because he "was stuck with fading memories of both state and defense witnesses."

A successful Due Process claim for pre-indictment delay requires that a petitioner establish (1) prejudice to his right to a fair trial, and (2) that the government intentionally caused the delay to gain a tactical advantage. *United States v. Wright*, 343 F.3d 849, 859 (6th Cir. 2003) (citing *United States v. Brown*, 667 F.2d 566, 567 (6th Cir. 1982)).

The Michigan Court of Appeals rejected McKissic's claim, holding that the prejudice resulting from pre-indictment delay must be actual and substantial and that the alleged imperfections of a witness's memory are generally insufficient to establish actual and substantial prejudice. *McKissic I*, 2002 WL 408930, at *3. The district court agreed, concluding that the state court's

determination that McKissic's "vague allegations of prejudice were insufficient to warrant reversal was not contrary to or an unreasonable application of Supreme Court precedent." *McKissic II*, slip. op. at 15.

We agree with the district court. Although McKissic indicates that the charges against him necessitated an alibi offense, he does not argue that he would have been able to bring an alibi defense if indicted earlier, describe the content of that alibi offense, or explain how the delay prevented him from bringing that defense. He argues only that the delay resulted in the loss of witnesses' memories. That conclusory argument is insufficient for showing prejudice. *See Payne v. Rees*, 738 F.2d 118, 121 (6th Cir. 1984). Moreover, even if he had established prejudice, McKissic has not shown that the delay was an intentional act by the government to gain a tactical advantage.

### 3. Prosecutorial Misconduct

McKissic next argues that the state engaged in misconduct by introducing the plea agreements of his co-defendants into evidence. According to McKissic, the prosecutor improperly sought admission of the plea agreements as evidence that the offenses occurred and that McKissic "must therefore be guilty as well." The State responds that this argument is procedurally defaulted because McKissic's trial attorney affirmatively stated at trial that he had no objection to the admission of the plea agreements.

For noncompliance with a state procedure to serve as a bar to habeas review, the state procedure must satisfy the standards set forth in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). *Smith v. Ohio Dep't of Rehab. & Corrs.*, __ F.3d __, No. 04-4280, 2006 U.S. App. LEXIS 22843, at *9 (6th Cir. Sept. 8, 2006). First, there must be a state procedure in place that the petitioner failed

to follow. *Id.* Second, the state court must have actually denied consideration of the petitioner's claim on the ground of the state procedural default. *Id.* Third, the state procedural rule must be an "adequate and independent state ground" to preclude habeas review. *Id.* To be "adequate," a state procedural rule must be "firmly established and regularly followed." *Id.* at \*10 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-33 (1991)). An "independent" state procedural rule is one not relying on federal law. *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)). If these three factors are satisfied (thus imposing the procedural bar), the petitioner can overcome the procedural default by either "demonstrating cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or demonstrating that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* (quoting *Coleman*, 501 U.S. at 750).

The three *Maupin* standards for procedural default are satisfied here. First, McKissic does not dispute that his attorney's affirmative agreement to the introduction of the plea agreements constituted waiver of appellate review of this issue under Michigan law. *See McKissic I*, 2002 WL 408930, at \*2 (citing *People v. Carter*, 612 N.W.2d 144, 149 (Mich. 2000)). Second, the Michigan Court of Appeals, the last state court to address this issue, denied this claim on that procedural ground. *See id.* Third, this procedural rule is an adequate and independent state ground. It is independent because it does not rely on federal law. It is adequate because it is firmly established and regularly followed by Michigan courts. *See id.* at 150 ("[C]ounsel expressly approved the trial court's response and subsequent instruction. This constitutes a waiver that *extinguishes* any error."); *People v. Riley*, 636 N.W.2d 514, 518 (Mich. 2001) ("Because defendant waived, as opposed to forfeited, his rights under the rule, there is no 'error' to review."); *People v. Tate*, 624 N.W.2d 524,

559 (Mich. Ct. App. 2001) (same); *People v. Brown*, No. 222151, 2001 WL 1657240, at *1 (Mich. Ct. App. Dec. 18, 2001) (same); *People v. Bridgewater*, No. 212889, 2001 WL 664724, at *2 (Mich. Ct. App. May 18, 2001) (same).

McKissic does not contend he can show cause and prejudice for the default. And although he argues that the default will result in a fundamental miscarriage of justice, that would occur only if McKissic could show he was "actually innocent." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). He fails to do so. We therefore agree with the district court that this claim is procedurally defaulted.

4. Double Jeopardy

Finally, McKissic argues that his conviction violates double-jeopardy principles because his convictions in state and federal court arose out of the same transactions. The Double Jeopardy Clause "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz*, 424 U.S. 600, 605 (1976).

The Michigan Court of Appeals held that McKissic's state-court convictions did not violate the Double Jeopardy Clause because his federal drug-trafficking charges were dismissed under the plea agreement, and "[j]eopardy does not attach to charges dismissed as part of a plea agreement." *McKissic I*, 2002 WL 408930, at *3 (citation omitted). McKissic pleaded guilty to only the federal charge of money laundering. The Michigan court explained that pleading to this charge "raises no double jeopardy issues with respect to defendant's state court indictment for delivery, possession, and conspiracy to deliver cocaine." *Id.*

The district court determined that this conclusion was not contrary to, or an unreasonable application of, Supreme Court precedent. *McKissic II*, slip op. at 17 ("[J]eopardy does not attach, and the constitutional prohibition can have no application, until a defendant is put to trial before the trier of facts, whether the trier be a jury or a judge." ) (quoting *United States v. Toaz*, 59 Fed. Appx. 94, 100 (6th Cir. 2003)). We agree with the district court; McKissic has been prosecuted only once for the convictions he appeals here. This claim is therefore without merit.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court dismissing McKissic's petition for a writ of habeas corpus.