NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0308n.06
Filed: May 7, 2007

No. 05-1785

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DONALD MAHADAY, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOHN CASON, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

Before: DAUGHTREY, ROGERS, Circuit Judges; OBERDORFER, District Judge[*]

ROGERS, Circuit Judge: This appeal concerns Donald Robert Mahaday, Jr.'s claim that he received ineffective assistance of counsel because his trial and appellate counsel failed to establish that state officials granted Mahaday immunity from prosecution in 1979. We affirm the denial of Mahaday's habeas petition because the record reveals no evidence of a written immunity agreement and, if an oral agreement existed, Mahaday materially breached it when he lied about his involvement in the crimes at issue in this appeal.

On January 27, 1979, either Mahaday or Michael Loukas murdered William Crayne and shot Richard Nagy. Shortly after the shootings, Mahaday went to the police and told them that he was

_____

[*]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

present when Loukas shot Crayne and Nagy but that he was not involved in the crimes.[1] Mahaday

asked the police whether they would charge him "just because I was with the guy," JA 682, to which

police responded that, "if [Mahaday] was just there and didn't do anything, didn't participate in it

that [he] wouldn't be charged." JA 683. With these assurances, Mahaday agreed to testify in the

criminal proceedings against Loukas. Because Mahaday feared retribution for his testimony against

Loukas, authorities agreed to relocate Mahaday temporarily and to provide him with a witness fee.

According to Mahaday's 2004 testimony, just prior to taking the witness stand against

Loukas, Mahaday received immunity from the prosecutor for testifying. Mahaday described how

a prosecutor asked Mahaday whether he was "going to go in there [the courtroom] and testify to the

exact same thing [as contained in Mahaday's police statement]." JA 981. Mahaday said that he

would, and the prosecutor responded, "do you know that if you don't go in there and testify to the

---

[1]A somewhat illegible Supplementary Report described how police received "another phone call from [someone] who identified himself as Donald," presumably Mahaday. JA 229-230. It reads:

> He stated that he [and] his girlfriend were driving in Loukas' car with [Loukas] driving and they picked up two hitchhikers[. Their talk] turned to drugs and [Loukas] told them that he could get some acid for them and believed [that the two] hitchhikers had at least $200.00 each on them. [Mahaday] said that he wanted to go [illegible] ripping the two guys off but wanted to drop his girlfriend off first. They stopped at [illegible] address and [Mahaday] and his girlfriend got out of the car and went into the house. . . . [When Mahaday] was leaving he observed Loukas in his bedroom [and] a .22 caliber automatic in his hand. [Mahaday] tried to talk him into leaving the gun at the house but Loukas put it inside his jacket. Loukas left and went back to the car and [Mahaday] followed him. When they got to the car the two hitchhikers were gone. [Mahaday] got into the car with Loukas still trying to talk him out of [taking] the gun. They drove a few blocks and they saw the two hitchhikers walking. Loukas tried to talk the two men back to the car but they wouldn't go to the car. Loukas stopped the car and he got out and approached the two men. [Mahaday] stated [that] it appeared the men were arguing and he saw Loukas push one of the men. . . . [Mahaday] heard some shots. He saw one of the men fall then saw Loukas shoot the second man four times in the chest. . . .

2

same thing, that you're going to be charged." Mahaday responded, "I know, as long as I go in there and testify, I'm not going to be charged, I'm going to be given immunity for this?" JA 981. The prosecutor said, "yes . . . as long as you go in there and don't do anything stupid, testify exactly like the statement is, you'll be released from custody and you won't be charged." JA 981.[2]

Mahaday's description of events shows that authorities initially viewed Mahaday as a witness; however, their views quickly changed after Jeffrey Galloway described Mahaday's statements on the night of the shooting. Galloway, a witness at a party that Mahaday and Loukas attended, told authorities that Mahaday boasted that he, not Loukas, shot Crayne and Nagy. At Mahaday's trial, Galloway testified that Mahaday, not Loukas, was carrying a gun before the shooting and that Mahaday returned with a gun, telling Loukas, "That's nothing to be talking about." JA 612. Sherry Jurumu, another witness, corroborated Galloway's version of events when she testified that Mahaday, not Loukas, carried the gun before and after the shootings.

After authorities found evidence that Mahaday was the shooter, they arrested him, and he admitted that he was with Loukas on the night of the shootings, that the two agreed to sell Crayne and Nagy fake mescaline, an illegal hallucinogen, and that Mahaday told Loukas not to throw away the gun because Mahaday could sell it. Mahaday denied that he was the killer and continued to insist that Loukas was the shooter.

---

[2]Although Mahaday testified that the police and the prosecutor qualified their statements (e.g. "if I was just there," "as long as you . . . testify exactly like the statement"), Mahaday testified that it was not possible that "the prosecutor was saying 'if your story is true, we won't be charging you.'" JA 986.

After a trial in the Detroit Recorder's Court, a jury convicted Mahaday of first degree felony murder in violation of Mich. Comp. Laws § 750.316 and assault with intent to murder in violation of Mich. Comp. Laws § 750.83. Judge Justin Ravitz subsequently sentenced Mahaday to life without parole, noting "There's something fundamentally wrong with you. And I don't know what it is. You obviously have very little feeling as a human being." JA 64. The Michigan Court of Appeals affirmed Mahaday's conviction, *People v. Mahaday*, 310 N.W.2d 805, 108 Mich. App. 591 (1981), and the Michigan Supreme Court denied leave to appeal, *People v. Mahaday*, 411 Mich. 1079 (1981).

On an undetermined date, Mahaday filed a motion for relief from judgment, which the trial court denied on May 14, 1999. Because Mahaday did not establish that he was entitled to relief under Michigan Court Rule 6.508(d), the Michigan Court of Appeals denied Mahaday's leave to appeal. *People v. Mahaday*, No. 233009 (Mich. Ct. App. June 26, 2001) (unpublished). The Michigan Supreme Court denied leave to appeal on March 4, 2002. *People v. Mahaday*, 641 N.W.2d 856 (2002).

In June 2002, Mahaday filed an application for writ of habeas corpus, raising thirteen grounds for relief.[3] The district court denied the petition but issued a certificate of appealability with respect to two issues, only one of which has been brought before this court on appeal: whether trial and appellate counsel were constitutionally ineffective in failing to investigate and raise Mahaday's immunity claim.

---

[3]The district court rejected the State's argument that Mahaday procedurally defaulted on his habeas claim. The State does not pursue the procedural default issue on this appeal.

4

In reviewing Mahaday's immunity-related claim, this court cannot afford the Michigan courts the normal deference that they receive under the Antiterrorism and Effective Death Penalty Act of 1996. The Michigan courts ruled that Michigan Court Rule 6.508(d) prevented Mahaday from bringing the claim, and the state courts did not reach the merits of the claim. On appeal in this court, however, the state does not argue procedural default, and we therefore do not address whether Mahaday procedurally defaulted his immunity-related claim. We are therefore left only with the merits of Mahaday's claim, merits that the state courts did not reach. In such circumstances, *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003), instructs this court to review the record de novo.

Because Mahaday cannot establish either statutory or constitutional immunity, we affirm, although our reasoning differs somewhat from that of the district court. It is clear that Mahaday has no claim based on a grant of immunity if we distinguish carefully between immunity granted pursuant to Michigan statutory authority, M.C.L.A. §780.702, on the one hand, and some nonstatutory immunity that nonetheless implicates constitutional due process, on the other. *Cf. United States v. Mendizabal*, No. 05-6887, 2006 WL 3741185 at *5 (6th Cir. Dec. 20, 2006) (describing the difference in federal law between statutory immunity and "pocket" or "informal" immunity). It is true that Michigan statutory immunity—under M.C.L.A. §780.702 as it existed before 1999 and under a fair reading of the Michigan Supreme Court's interpretation of analogous language in *People v. McIntire*, 599 N.W.2d 102, 106 (Mich 1999)—provided immunity from prosecution for self-incriminated offenses even if the testimony was false. Such a strong form of statutory immunity, however, was based on the plain meaning of the language of the immunity statute, and simply does not apply to informal, nonstatutory immunity.

5

Mahaday argues that trial and appellate counsel were ineffective when they failed to establish the written-document requirement for immunity that the Michigan Supreme Court articulated in *People v. McIntire*, 599 N.W.2d at 106 (quoting Mich. Comp. Laws § 767.6). Mahaday testified that he informed both his trial and appellate counsel of the prosecutor's assurances that authorities would not prosecute him but claims that his attorneys did not secure documentation of that agreement and that relevant records burned in a fire. Second, Mahaday appears to argue that the oral assurances of the prosecuting attorney were sufficient to create immunity. Neither argument has merit.

Mahaday's argument that his trial and appellate counsel were ineffective when they failed to generate evidence of a statutory immunity is without merit. Statutory immunity under pre-1999 Michigan law required application by the prosecuting attorney to the trial court, and an order by the trial court. MCLA § 780.701. Mahaday has provided no evidence of such an application or court order. Mahaday argues on the instant appeal that his defense counsel was ineffective in inquiring as to whether immunity had been granted, but makes no argument that counsel somehow failed to obtain the court immunity order required by statute prior to his testimony in the Loukas preliminary hearing.

The record is void of any indication that the prosecutor either sought or obtained a court order of immunity in this case. It is thus entirely different from *McIntire,* where the Michigan Supreme Court found that the state could not prosecute a witness for murder after the witness obtained immunity and provided false testimony. In *McIntire*, as in this case, the defendant testified against a suspect after the prosecutor offered him immunity, and, as in this case, the State prosecuted the defendant after new evidence established that the defendant, and not the original suspect, was

6

responsible for the murder. 599 N.W.2d at 104. As in this case, the State claimed that the defendant's testimony against the original suspect was not truthful and that the immunity agreement was invalid. *Id.* *McIntire* differs from this case because there was a grant of statutory immunity in that case. The prosecutor in *McIntire* asked the court to grant immunity in open court. *Id.* Mahaday cites no evidence in over 1,000 pages of record before this court that the prosecutor asked the trial court to grant immunity. Second, the court in *McIntire* granted a motion for an order "granting the witness, Charles McIntire, now present before the Grand Jury ordered in this session, complete immunity from any charges which would arise from the homicide of Nolan Fritz." *Id.* at 104 n.2. Here, in contrast, there is no evidence that the trial court issued a written order granting immunity, and Mahaday concedes that written documents probably do not exist. The entire analysis of the Michigan Supreme Court is based on the plain meaning of the statutory language. *Id.* at 103 (applying traditional principles of statutory construction).

Mahaday's claim that the State offered him informal immunity is also without merit. Due process requires the government to adhere to the terms of any immunity agreement that it makes. *United States v. Fitch*, 964 F.2d 571, 576 (6th Cir. 1992). Immunity agreements are like contracts in that "normal contract law standards" govern their interpretation, *id.* at 574, and, if there is a breach of the immunity agreement, the available remedies are those that the contract specifies, *McKissic v. Birkett*, 200 Fed. App'x 463, 468 (6th Cir. 2006).

In this case, Mahaday's untruthful testimony about Loukas was a material breach of any immunity agreement that may have existed[4] between Mahaday and the State.[5] *See id.* at 468 (*citing United States v. Reed*, 272 F.3d 950 (7th Cir. 2001)); *United States v. Escobar*, 106 Fed. App'x 446, 452 (6th Cir. 2004) (attempting to conceal from authorities the full extent of narcotics dealing constituted breach). In this case, prosecutors did not receive the truthful testimony for which they bargained, and Mahaday's breach of the immunity agreement permitted the State to pursue available remedies. Because the informal immunity agreement, to the extent that it existed, is silent as to the remedy, the State could respond to Mahaday's breach by prosecuting him. *McKissic*, 200 Fed. App'x at 468; *United States v. Reardon*, 787 F.2d 512, 515-16 (10th Cir. 1986). For this reason, the State's decision to prosecute Mahaday in response to his untruthful testimony did not constitute a violation of any oral agreement that might have existed.

Because there is no evidence of statutory immunity and because Mahaday materially breached any oral immunity agreement thereby permitting the State to prosecute him, Mahaday's trial and appellate counsel were not ineffective when they failed to argue that prosecutors granted

----

[4]It is not clear that the prosecutor actually offered Mahaday immunity. Mahaday might have fabricated his self-serving testimony regarding the nature of the oral agreement. The passage of a quarter century of time and the incentive to lie to secure freedom might have colored Mahaday's version of what the prosecutor told him just before testifying against Loukas.

[5]Mahaday appears to argue that he did not breach the oral immunity agreement because he truthfully testified that Loukas was the shooter. This argument is without merit. To demonstrate the truthfulness of Mahaday's testimony, he cites a letter in which Galloway recanted his testimony against Mahaday. As the district court properly pointed out, Galloway's alleged recantations must be "viewed with extreme suspicion." *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991). First, Sherry Jurumu's testimony supported Galloway's original testimony and undermines his recantation. Second, Galloway recanted his recantation. For these reasons, Galloway's first recantation does not establish that Mahaday complied with the oral immunity agreement.

8

Mahaday immunity.  For these reasons, we affirm the district court's denial of Mahaday's habeas petition.