PEOPLE v PARSONS

Docket No. 76081. Submitted October 10, 1984, at Lansing.—Decided
    May 8, 1985. Leave to appeal applied for.

As part of an investigation by the Special Investigation Division
    of the Michigan Department of Treasury concerning compli-
    ance with state tax laws by the Castle Farms Music Theatre, a
    search warrant was issued and a search conducted at the
    premises of Castle Farms and at the residence of Arthur
    Reibel. Among the taxpayers identified in the search warrant
    was Bradley Parsons. Parsons was present at the times the
    searches were conducted and was later contacted by one of the
    investigators involved or by an assistant attorney general and
    allegedly was informed that if he did not agree to cooperate in
    the investigation he would be criminally prosecuted. Parsons
    agreed to be interviewed by the investigator and the assistant
    attorney general. Prior to the interview, Parsons talked with
    his attorney, and then was given his *Miranda* warnings. He
    was also told again that if he did not answer the questions he
    could be criminally prosecuted. No subpoena or court order was
    issued compelling Parsons' appearance or statement. Parsons
    then gave a statement to the investigators. Bradley Parsons
    and Arthur Reibel were subsequently charged in district court
    with evasion of the Single Business Tax. The district court
    granted Parsons' motion to suppress evidence of the statement
    he gave to the investigators on the grounds that the statement
    was coerced and involuntarily given. The charges against both
    Parsons and Reibel were dismissed on the basis that the statute
    which empowers the commissioner of revenue or his agents to
    examine a taxpayer's books, records, and papers bars prosecu-
    tion because Parsons was ordered to give the statement. The

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes § 155 *et seq.*
[2, 4] 81 Am Jur 2d, Witnesses § 59.
    Prosecutor's power to grant prosecution witness immunity from
        prosecution. 4 ALR4th 1221.
    Right of defendant in criminal proceeding to have immunity from
        prosecution granted to defense witness. 4 ALR4th 617.
[3] 81 Am Jur 2d, Witnesses § 56.
[5] 81 Am Jur 2d, Witnesses §§ 41, 44, 45.

people appealed to the Charlevoix Circuit Court, which affirmed the dismissal of charges against Parsons, Martin B. Breighner, J. The people appeal by leave granted, arguing that Parsons was not required to give any statement and therefore is not entitled to transactional immunity from prosecution in connection with the giving of the statement. *Held:*

Because defendant was not ordered, within the meaning of the statute, to testify, never refused to testify, and never invoked his privilege against self-incrimination, he is not entitled to the blanket protection of transactional immunity. However, the fact that defendant's statement was involuntarily given does entitle him to immunity from use of the statement against him in a criminal proceeding. The district court correctly suppressed defendant's statement on the basis that it was coerced and therefore involuntarily given, but both the district court and the circuit court erred in dismissing the charges under the belief that defendant was therefore entitled to be free from prosecution.

Reversed.

1. STATUTES — JUDICIAL CONSTRUCTION.

A reasonable construction must be given to statutory language, the meaning of which is questioned, by looking to the purpose subserved thereby, and the meaning must be derived from the statutory context within which the language is used.

2. WITNESSES — TESTIMONY — TRANSACTIONAL IMMUNITY.

A transactional immunity provision which requires a person to give testimony but prohibits prosecuting that person for crimes which relate to the testimony given must be at least as broad as the constitutional protection against self-incrimination for which it is a substitute.

3. WITNESSES — IMMUNITY — SELF-INCRIMINATION.

Immunity statutes are not self-executing; the privilege against self-incrimination is waived if it is not claimed.

4. WITNESSES — TESTIMONY — TRANSACTIONAL IMMUNITY.

Persons, even when subpoenaed by a grand jury, are not entitled to transactional immunity unless they raise their constitutional privilege or object to answering any question tending to incriminate.

5. TAXATION — COMMISSIONER OF REVENUE — INVESTIGATIONS — WITNESSES — TESTIMONY — IMMUNITY.

A person who was given *Miranda* warnings, consulted his attorney before speaking to revenue agents, never refused to testify

during an investigation, never invoked his privilege against self-incrimination, and was not ordered to testify within the meaning of the statute which empowers the commissioner of revenue or his agents to examine a taxpayer's books, records, and papers is not entitled to the blanket protection of transactional immunity in connection with testimony given during the investigation; however, that person is entitled to immunity from use of the statement against him in a criminal proceeding where it is determined that the statement he gave was involuntarily given.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *E. David Brockman*, Assistant Attorney General, for the people.

*Scodeller, Wilson, DeLuca & Vogel* (by *Robert C. Vogel*), for defendant.

Before: DANHOF, C.J., and GRIBBS and R. M. SHUSTER,* JJ.

## TYPE OF CASE

PER CURIAM. Defendant successfully argued to the courts below that he was entitled to immunity from prosecution because he had been ordered under threat of prosecution to give a statement. The attorney general, on behalf of the prosecution, appeals by leave granted, arguing that defendant was not required to give the statement and therefore is not entitled to transactional immunity.

## APPLICABLE LAW

MCL 205.3; MSA 7.657(3).

## ISSUE AND DECISION

Is a person entitled to immunity from prosecu-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tion under MCL 205.3; MSA 7.657(3) because the person felt compelled to make a statement although there was no court order or subpoena requiring him to do so?

In this case, where defendant had not been subpoenaed, never refused to testify, and never invoked his privilege against self-incrimination, defendant was not entitled to immunity from prosecution under the statute.

## FACTS

This criminal action resulted from an investigation by the Special Investigation Division of the Michigan Department of Treasury concerning compliance with state tax laws by the Castle Farms Music Theatre. As part of the investigation, a search warrant was issued on August 28, 1980, and executed at the premises of Castle Farms and the residence of defendant-appellee's codefendant, Arthur Reibel. David Nummer, an investigator with the Michigan Department of Treasury, participated in the execution of the warrant and met defendant at that time. Defendant testified that he was subsequently contacted by telephone by either Nummer or Paul Bricker, an assistant attorney general, and was informed that if he did not agree to cooperate in the investigation he would be criminally prosecuted.

On September 2, 1980, defendant was interviewed by Bricker and Nummer. Before questioning commenced, defendant talked with his attorney. He was also given his *Miranda*[1] warnings. He was again told that if he did not answer the questions he could be criminally prosecuted. The present criminal proceedings were subsequently

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

commenced against defendants, charging them
with tax evasion under MCL 208.101; MSA
7.558(101).

At the preliminary examination for both defen-
dants, a *Walker*[2] hearing was held on defendant's
motion to suppress the statement he gave to Num-
mer and Bricker. The district court suppressed the
statement, finding it was coerced and therefore
involuntarily given. The district court then pro-
ceeded to dismiss the charges against both defen-
dants on the basis that the statute barred prosecu-
tion because defendant was "ordered" to give the
statement, within the meaning of the statute. The
Charlevoix County Circuit Court affirmed the dis-
missal of the charges against defendant, but re-
versed the district court's dismissal of charges as
to codefendant Reibel. The propriety of the court's
actions concerning Reibel is not before this Court
at this time.

## Discussion

The statute at issue in this case, MCL 205.3(a);
MSA 7.657(3)(a), enumerates the powers and duties
of the commissioner of revenue. It authorizes the
commissioner or any of the commissioner's agents
to examine a taxpayer's books, records, and pa-
pers. The commissioner or agents "may issue a
subpoena requiring a person to appear and be
examined" concerning tax matters, may adminis-
ter oaths to witnesses, and may invoke the aid of
the circuit court in conducting its inquiry. The
statute provides that the circuit court "in case of
contumacy or refusal to obey a subpoena, may
issue an order requiring the person to appear
before the department", with failure to obey the

---

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87
(1965).

court order resulting in contempt. Finally, the statute specifies:

> "No person shall be excused from testifying or from producing any books, papers, records, or memoranda in any investigation, or upon any hearing *when ordered to do so by the commissioner,* upon the ground that the testimony or evidence, documentary or otherwise, may tend to incriminate or subject him to a criminal penalty; but no person shall be prosecuted or subjected to any criminal penalty for or on account of any transaction made or thing concerning which he may testify or produce evidence, documentary or otherwise, before the board or its agent." MCL 205.3(a); MSA 7.657(3)(a). (Emphasis added.)

Thus, when the commissioner orders a person to testify, the person may not refuse to testify on the grounds that the testimony would tend to incriminate him, but the person cannot be prosecuted based on his testimony. The issue in this case is whether defendant Parsons was "ordered" to testify within the meaning of the statute so as to make him immune from prosecution.

When the meaning of statutory language is questioned, a reasonable construction must be given by looking to the purpose subserved thereby, *Frost-Pack Distributing Co v Grand Rapids,* 399 Mich 664, 682-683; 252 NW2d 747 (1977), and the meaning must be derived from the statutory context within which the language is used. *CAF Investment Co v State Tax Comm,* 392 Mich 442, 454; 221 NW2d 588 (1974). A transactional immunity provision which requires a person to give testimony, but prohibits prosecuting that person for crimes which relate to the testimony given, must be at least as broad as the constitutional protection against self-incrimination for which it is a substitute. *In re Colacasides,* 379 Mich 69, 84;

150 NW2d 1 (1967); *In re Watson,* 293 Mich 263, 276; 291 NW 652 (1940). Thus, it would be reasonable to construe the statute as preserving a person's state and federal constitutional privileges against self-incrimination, but at the same time allowing the commissioner to gather testimony and information to carry out his duty to enforce the tax laws.

The self-incrimination prohibition in the constitution provides: "No person shall be compelled in any criminal case to be a witness against himself * * *." Const 1963, art 1, § 17. The constitutional protection is triggered when a person is "compelled" to testify; the statutory immunity provision which substitutes for the constitutional protection is triggered when a person is "ordered" to testify. We question whether the Legislature intended to extend the benefits of transactional immunity to a person who may have answered questions involuntarily under threat of prosecution, but who was never formally ordered to answer the questions as by a subpoena or court order.

The statutory provision under scrutiny in this case empowers the commissioner to issue a subpoena. That is the only type of "order" the commissioner is authorized to give. It also authorizes the commissioner or agents to enlist the aid of the circuit court, which may issue an "order". One of the grounds on which the circuit court may issued an order is refusal to obey a subpoena. The statute does not use the word "order" in connection with the commissioner or agents, only with the circuit court—until, in the penultimate sentence, it specifies that a person may not be excused from testifying "when ordered to do so by the commissioner". Since the only order the commissioner is directly authorized to give is a subpoena, we must conclude that this is what the statute is referring to. As the

circuit court may also issue an order at the commissioner's request, the phrase could logically be extended to cover court orders as well. But as the statute does not mention other situations in which the commissioner may order a person to testify, we have no grounds for extending the transactional immunity provision to such situations.

Of the many other Michigan statutes offering immunity in exchange for incriminating testimony, many specify that immunity is available only to a witness who has been subpoenaed: oil and gas conservation, MCL 319.9; MSA 13.139(9); railroad commission, MCL 462.27; MSA 22.46; bribery, MCL 750.125; MSA 28.320; trusts and monopolies, MCL 750.560; MSA 28.828; cigarette tax, MCL 205.517; MSA 7.411(17); antitrust, MCL 600.2155; MSA 27A.2155; supplementary proceedings, MCL 600.6110; MSA 27A.6110. Statutes in the penal code refer to a witness "required" to testify: conspiracy, MCL 750.157; MSA 28.354; incest, MCL 750.334; MSA 28.566; prize fighting, MCL 750.446; MSA 28.701; prostitution, MCL 750.453; MSA 28.708. The statute authorizing discovery of corporate assets applies to testimony compelled at "the direction of the court", MCL 600.3630; MSA 27A.3630. The immunity provision in the Insurance Code is triggered when the person asks to be excused from testifying and is then "directed" to testify. MCL 500.2033; MSA 24.12033.

The uniform securities act immunity provision reads much like the statute at issue in this case, except that immunity from prosecution is granted only after the witness has claimed his privilege against self-incrimination. MCL 451.807; MSA 19.776(407). The code of criminal procedure provision grants immunity only per a written order entered by the judge pursuant to a written motion

by the prosecutor, setting forth verbatim the questions the witness has refused to answer. MCL 767.6; MSA 28.946. This statute, like the federal witness immunity statute, leaves no room to argue about whether the witness has been "ordered" to testify and is triggered by the witness's refusal to testify. The witness immunity act in MCL 780.701; MSA 28.1287(101) is very similar.

Other statutes containing language identical to the revenue commissioner act are those dealing with fire prevention, MCL 29.7; MSA 4.559(7), and unemployment compensation, MCL 421.9; MSA 17.509. We have found no cases construing those statutes in the situation presented by the case at bar.

Lacking Michigan jurisprudence on this issue, the parties have directed us to federal law. The immunity provision of the original Interstate Commerce Act, 49 USC 46, was upon its enactment in 1893 essentially the same as the immunity provision at issue in this case. In *United States v Armour & Co,* 142 F 808 (ND Ill, 1906), the court construed that statute as affording immunity to persons acting in compliance with an official request without a subpoena or court order. Congress then amended the statue to specifically provide that immunity extended only to a person who testified in obedience to a subpoena. See *United States v Monia,* 317 US 424, 429; 63 S Ct 409; 87 L Ed 376 (1943).

The 1893 act, as amended, was the model for more than 50 immunity statutes enacted subsequently by Congress. See *State v Kenny,* 68 NJ 17; 342 A2d 189 (1975). In 1970, Congress repealed those statutes and enacted 18 USC 6002, which provides:

"Whenever a witness refuses, on the basis of his

privilege against self-incrimination, to testify or provide other information in a proceeding before * * * a court or grand jury * * *, an agency * * *, or [Congress], and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order * * * may be used against the witness in any criminal case * * *."

Unlike previous federal immunity statutes, this act confers use immunity rather than transactional immunity, but the Supreme Court has ruled that use immunity is coextensive with the scope of the privilege against self-incrimination. *Kastigar v United States,* 406 US 441, 453; 92 S Ct 1653; 32 L Ed 2d 212 (1972).

The federal statute leaves no room to argue about whether the witness has been ordered to testify. The immunity statues are not self-executing. *United States v Seavers,* 472 F2d 607 (CA 6, 1973). Pursuant to § 6003, the United States attorney must request the court to issue the order mentioned in § 6002. If no order is issued, no immunity can be bestowed. *Seavers,* p 610. Thus, directives or requests which fall short of court orders would be insufficient to confer immunity. Moreover, the statute is triggered by the witness's refusal to testify and/or invocation of the privilege against self-incrimination.

In reviewing various state statutes granting immunity from prosecution in exchange for testimony, Professor Wigmore concludes that a subpoena is not necessary: "* * * the state power is impliedly invoked by the very situation". 8 Wigmore, Evidence, § 2282, pp 514-515. He does however find that it is essential that the witness claim the privilege aginst self-incrimination before immunity can attach:

"The immunity was intended to be given solely as the means of overcoming the obstacle of the privilege, and therefore * * * could not come into effect until that obstacle was explicitly presented and thus needed to be ovecome." *Wigmore*, pp 516-517.

Professor Wigmore finds the need for an explicit claim of privilege as a prerequisite to a grant of immunity especially great when the testimonial disclosure is made before an administrative officer having the auxiliary power to subpoena witnesses and to obtain judicial aid to enforce its testimonial powers, because the officer cannot know, of the mass of facts he has the power to extract, which may be privileged and which may not be.

The numerous cases cited in Professor Wigmore's treatise to support this assertion contradict defendant's claim that he need not invoke his privilege against self-incrimination in order to be protected by statutory immunity. Defendant contends, relying on *United States v Armour, supra,* that the two are distinct and that statutory immunity "attaches automatically" when the accused is required to testify. To the contrary, immunity statutes are not self-executing. *Seavers, supra; United States v Silkman,* 543 F2d 1218 (CA 8, 1976), *cert den* 431 US 919; 97 S Ct 2185; 53 L Ed 2d 230. The privilege against self-incrimination is waived if it is not claimed. *Rogers v United States,* 340 US 367; 71 S Ct 438; 95 L Ed 344 (1951).

Were the statute at issue in this case a federal one, as in *Armour,* defendant's contention would have support from *Monia, supra,* where the Supreme Court ruled that a defendant need not claim the privilege if the immunity statute does not expressly require it. However, *Monia* was distinguished from Michigan law in *People v Reading,* 307 Mich 616, 630; 12 NW2d 482 (1943), the

Court observing: "Obviously the *Monia Case* was controlled by a specific Federal enactment which in no way controls criminal procedure in this jurisdiction." The statute at issue in *Reading*—3 Comp Laws 1929, § 17220—, like the statute in *Monia,* contained no express requirement that the priviledge be invoked, yet the Court refused to grant immunity to a witness who had never claimed that his testimony might be incriminating.

Our Supreme Court has ruled that, even when subpoenaed by a grand jury, persons are not entitled to transactional immunity unless they raise their constitutional privilege, *People v Robinson,* 306 Mich 167, 173-174; 10 NW2d 817 (1943), *cert den* 320 US 799; 64 S Ct 369; 88 L Ed 482 (1943), or object to answering any question tending to incriminate. *People ex rel Roach v Carter,* 297 Mich 577, 580; 298 NW 288 (1941). See also *People v Willson,* 205 Mich 28, 41-44; 171 NW 474 (1919); *People v Smith,* 257 Mich 319, 323; 241 NW 186 (1932); *People v Diponio,* 48 Mich App 128; 210 NW2d 105 (1973), *lv den* 391 Mich 782 (1974); *People v Hunley,* 63 Mich App 97; 234 NW2d 169 (1975); *People v Ewing,* 99 Mich App 110, 114; 297 NW2d 628 (1980).

There is no indication in this case that defendant refused, or was likely to refuse, to answer any questions. Although not required, defendant was given his *Miranda* warnings. In addition, defendant consulted with his lawyer before speaking with the revenue agents. Since we have concluded that defendant was not ordered to testify within the meaning of the statute, and since defendant also never refused to testify and never invoked his privilege against self-incrimination, the blanket protection of transactional immunity should not be accorded this defendant.

The prosecution concedes that the finding that defendant's statement was involuntarily given entitles him to immunity from use of the statement against him in a criminal proceeding. *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965). The district court correctly suppressed defendant's statement on the basis that it was coerced and therefore involuntarily given. However, both the district court and the circuit court erred in dismissing the charges under the belief that defendant was therefore entitled to be free from prosecution.

Reversed.