# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERICA LYNNE KOSINSKI,

Defendant-Appellant.

UNPUBLISHED
October 24, 2017

No. 332560
Wayne Circuit Court
LC No. 15-008888-01-FH

Before: SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals from her jury trial conviction of eavesdropping, MCL 750.539c. The trial court sentenced defendant to one year probation. For the reasons set forth below, we affirm.

## I. UNDERLYING FACTS

Defendant and the complainant, Kevin Clark, were involved in a several-year long relationship and share a young child. They had a tumultuous relationship that included allegations of domestic violence on the part of Clark. In early 2015, at a time when Clark and defendant were involved in a custody dispute concerning the child, Clark began finding listening devices and GPS tracking devices concealed in the child's clothing during his parenting time. During a weekend visit with the child in March 2015, Clark discovered a device he described as "a Russian—some type of spy chip, or some type of listening device" sewn into the tongue of the child's shoe. On Tuesday, March 10, 2015, he went to the police with the device, and a police detective determined that the device was a voice or sound activated audio recorder. The detective retrieved 80 audio files from the recorder all dated Friday, March 6, 2015, a date during which Clark was with the child. The audio files averaged one to two seconds in length, with the exception of a few that were 20 to 30 seconds long. According to the detective's testimony, the files contained background noise and some voices, but the detective was unable to discern whose voices were on the recordings or what was being said. When asked by the detective, defendant denied any involvement in placing the recorder on the child and the investigation was closed for lack of evidence. However, a month later, during a proceeding in the family division of the circuit court regarding parenting time, Clark's attorney questioned defendant about the recording devices and defendant admitted that she had directed a tailor to put a recorder in the child's jacket. Clark gave a transcript of defendant's testimony at the hearing to the detective who reopened the investigation. Ultimately, defendant was charged with eavesdropping.

At trial, the prosecution presented and the court admitted defendant's testimony from the prior custody proceeding as substantive evidence against her. During her testimony at trial, defendant admitted to placing a recording device in the child's jacket, but stated that the device she put in the jacket was not the same device that was admitted in evidence and was not depicted in any of the photographs that Clark had taken of the devices he found on the child. She also contended that the device that was shown to her during the prior custody proceeding was not the same device admitted in her criminal trial. Defendant claimed that she acted under duress, and testified that she placed the recording device on the child because she feared the child was being abused by Clark based on the child's behavior following his visits and what the child was saying to her. She admitted that she put a recording device in the child's jacket to record her son when he was at parenting visits with Clark, and to "get on tape" that he was being abused by Clark because the authorities would not help her. The court also allowed limited testimony regarding Clark's past domestic violence toward defendant, that in May 2015 it was discovered that the child had amphetamines in his system following a visit with Clark, and that child protective proceedings were instituted against Clark. The trial court ultimately declined to instruct the jury on defendant's requested defense of duress. The jury found defendant guilty of eavesdropping, as charged.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to sustain her conviction of eavesdropping. We disagree.[1]

In reviewing a challenge to the sufficiency of the evidence, "this Court reviews the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000).

MCL 750.539c provides as follows:

> Any person who is present or who is not present during a private conversation and who willfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both.

To convict defendant of eavesdropping under MCL 750.539c, the prosecution must prove that defendant willfully used a device to eavesdrop upon a private conversation without the consent of the parties to the conversation. "Eavesdrop" or "eavesdropping" is statutorily defined as "to

---

[1] We review de novo a challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse." MCL 750.539a(2). According to the Supreme Court, "private conversation means a conversation that a person reasonably expects to be free from casual or hostile intrusion or surveillance." *People v Stone*, 463 Mich 558, 563; 621 NW2d 702 (2001).

In the instant case, Clark testified that he found three devices concealed in the child's clothing during various parenting time visits. He testified that he found the first device duct taped inside a tear in the front pocket of the child's jacket, the second device "taped and cut" into the front chest area of the child's jacket, and the third device sewn in the tongue of the child's shoe. Defendant admitted that she put a recording device in the child's jacket to record his conversations during parenting time with Clark. Defendant also admitted during her testimony in the custody proceeding, which was read into and admitted as substantive evidence at trial, that she directed a tailor to put a recorder inside the child's jacket. After Clark discovered the third device and filed a police report, the detective determined that the device was a sound or voice activated audio recorder, and retrieved 80 different audio files recorded on the day Clark was with the child. Although the detective could not discern "who the voices were or what was actually being said," from the audio files, we believe a jury could reasonably infer from the circumstantial evidence that defendant used the recording device to record private conversations between Clark and the child, and that the voices recorded by the device were parts of those private communications.

We acknowledge that there are inconsistencies in the testimony regarding the recording device. During her trial testimony, defendant admitted that she placed a recorder in the child's jacket; however, she testified that the device was not the same device that Clark found inside the child's shoe and that it was not depicted in any of the photographs that Clark had taken. She also contended that the device she was shown during the prior custody proceeding was not the same device that was admitted in evidence during her criminal trial, nor was it in any of the photographs Clark took of the devices he found in the child's clothing. There were also inconsistencies between the detective's testimony and Clark's testimony regarding where Clark found the specific recorder he gave to the detective. Specifically, Clark testified that he found the recording device in the child's shoe and provided a photograph depicting the device in the child's shoe, while the detective testified that Clark told him that the device was found in the lining of the child's jacket. Despite these inconsistencies, a rational jury could reasonably infer that defendant placed the recording device on the child.[2] The jurors could have found defendant's testimony that she did not place that specific recording device on the child to be unbelievable under the circumstances and that Clark or the officer who reported his statement,

---

[2] We view the testimony in the light most favorable to the prosecution and drawing all reasonable inferences and credibility choices in support of the jury verdict, *Lee*, 243 Mich App at 167. And we will not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

was confused about where this specific recorder was found, in light of the multiple devices involved. Such a conclusion would be particularly reasonable given the defendant's admissions and the lack of evidence that anyone else was placing recording devices in the child's clothes.

We also disagree with defendant's argument that the evidence failed to establish that she eavesdropped on a "private conversation," where the contents of the conversation could not be discerned from the snippets of voices and background noise heard on the audio files retrieved from the recording device. Defendant correctly asserts that there is no direct evidence that the device actually recorded communications between Clark and his son. However, the circumstantial evidence is sufficient to reasonably infer that the device found concealed on the child, during his parenting visits with Clark, was used to record their private conversations.

Accordingly, we conclude that there was sufficient evidence that defendant willfully used a device to eavesdrop upon Clark's private conversations without his consent.

### III. DEFENSE OF DURESS

Defendant contends that the trial court's refusal to instruct the jury on the defense of duress deprived her of a fair trial. Specifically, defendant claimed that her fear that Clark was abusing the child during parenting visits compelled her to place the recording device in the child's clothing in order to record the abuse. During trial, defendant presented testimony about Clark's past acts of domestic violence against her. She claimed that the child's behavior and the things he was saying made her believe that the child was being abused by and would be harmed by Clark. She stated that she filed multiple complaints with authorities, but no one would help her, and that after the alleged eavesdropping occurred, the child was found with amphetamines in his system after a visit with Clark, thus confirming her suspicion that Clark was abusing the child. In light of this testimony, defendant asserts that the trial court should have instructed the jury on duress. We disagree.[3]

It is axiomatic that a criminal defendant has a constitutional right to present a defense. *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). Consistent with that right, "[a] defendant has the right to have a properly instructed jury consider the evidence against him or her, and it is the trial court's role to clearly present the case to the jury and to instruct it on the applicable law." *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234 (2014) (citation and quotation marks omitted). " 'The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence.' " *Id.* (citation omitted).

---

[3] " 'Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion.' " *People v Henderson*, 306 Mich App 1, 3; 854 NW2d 234 (2014) (citation omitted). "The trial court abuses its discretion when its outcome falls outside the range of principled outcomes." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014).

The defendant's argument fails because although defendant submitted evidence of what she asserts was a good-faith motive, she has not presented evidence that could satisfy the elements of a duress defense. "Duress is a common-law affirmative defense." *People v Lemons*, 454 Mich 234, 245; 562 NW2d 447 (1997). "To merit an instruction on the affirmative defense of duress, a defendant must establish a prima facie case of the elements of duress." *People v McKinney*, 258 Mich App 157, 164; 670 NW2d 254 (2003). Duress occurs when:

> A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;
>
> B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;
>
> C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and
>
> D) The defendant committed the act to avoid the threatened harm. [*Henderson*, 306 Mich App at 4-5.]

"A threat of future injury is not sufficient; rather, the threatening conduct or act of compulsion must be present, imminent, and impending . . . ." *Id*. (quotation marks and citation omitted).

Applying these principles to the instant case, we find that the evidence does not support the defense of duress. Assuming that defendant satisfied the first three elements of duress by showing that: (a) the jury could reasonably infer from defendant's testimony that Clark's past acts of domestic violence together with the child's behavior after his parenting visits was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm to defendant or the child; (b) Clark's conduct actually caused such fear of death or serious bodily harm in defendant's minds; and (c) the fear was operating upon defendant's mind when she committed the act of eavesdropping. However, we hold that the circumstances fail to support the final element of duress—that defendant committed the act of concealing a recording device on the child to avoid Clark's abuse.

There is also no evidence to show how defendant's act of concealing a recording device on the child's clothing during his visits with Clark could have directly prevented or avoided any present, imminent, or impending abuse. To support a defense of duress, "the threatened danger [to be prevented or avoided] must be present, imminent, and impending." *People v Ramsdell*, 230 Mich App 386, 401; 585 NW2d 1 (1998). To the contrary, since defendant concealed the recording device in the child's clothing, Clark would have been unaware of its existence. As such, the act of concealing the device on her child to record the abuse could not have directly avoided any present, imminent, and impending abuse harm to the child during his parenting visits with Clark. Accordingly, it could not be reasonably inferred that defendant committed the act to avoid any threatened present or imminent harm. Indeed, defendant acknowledged in her testimony that she placed the recording device on the child to "get on tape that [her] son was being abused, because nobody was helping [her]." At best, defendant's act of eavesdropping, if successful in recording Clark's abuse, could have prevented the threat of future abuse or injury to the child, but would not have alleviated any impending or present harm to the child. *People v*

*Hubbard*, 115 Mich App 73; 80; 320 NW2d 294 (1982) (holding that to raise a defense of duress or necessity, "defendant's criminal act must support an inference that the criminal act would alleviate the impending harm").

Therefore, the trial court did not err when it declined to give the requested duress instruction.

We also reject defendant's argument that the trial court improperly restricted her testimony about Clark's past abusive and assaultive conduct toward her. During trial, defendant tried to testify about a non-amicable breakup between her and Clark, his attacks on her, an attempt to kidnap the child, and threats that Clark made about taking the child, but the trial court reminded her that although he would give her some "latitude," those issues were before another court. Defendant also tried to testify about what the child had said to her after his parenting visits with Clark, but the court ruled that the testimony was inadmissible hearsay. Although the trial court limited defendant's testimony in some respects, we do not find that these limitations compromised her right to present her defense. The trial court has a duty to control the trial "and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and ascertainment of the truth regarding the matters involved." MCL 768.29. Here, the trial court allowed significant testimony to establish that defendant feared Clark, to support her proposed defense of duress. That defense, however, was not sustainable even if the court had allowed her to present additional evidence of Clark's past abusive conduct because, as discussed, it could not be inferred from the evidence how her act of concealing a recording device on the child during parenting visits to record the abuse could have prevented or avoided any present, imminent, or impending abuse to the child. At best, the testimony could have prevented the threat of future injury or abuse, which is not sufficient to establish duress. We find no deprivation of her right to present her defense under these circumstances.

## IV. PERJURED TESTIMONY

Defendant next claims that Clark perjured himself during trial when he testified under oath that he did not enter a no contest plea to poisoning the child during child protective proceeding involving the child, rather, Clark testified that he pled to failure to protect the child while in the care of defendant. Defendant contends that this statement was false because the transcript of the child protective proceeding shows that Clark pled no contest to failure to protect the child based on his own conduct. Defendant argues that the prosecutor exacerbated the perjured testimony when he argued, during closing argument, that had Clark poisoned the child, his parental rights would have been terminated. Defendant contends that the cumulative effect of the perjured testimony and the prosecutor's statement deprived her of a fair and impartial trial.[4]

---

[4] We review "de novo claims of prosecutorial misconduct on a case-by-case basis, in the context of the issues raised at trial, to determine whether a defendant was denied a fair and impartial trial." *People v Fyda*, 288 Mich App 446, 460; 793 NW2d 712 (2010). A trial court's decision to deny the defendant's motion for a new trial is reviewed for an abuse of discretion. *People v*

" 'It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment.' " *People v Schrauben,* 314 Mich App 181, 187; 886 NW2d 173 (2016) (citation omitted). However, "not every contradiction is material and the prosecutor need not correct every instance of mistaken or inaccurate testimony." *People v Smith*, 498 Mich 466, 476; 870 NW2d 299 (2015) (quotation marks and citation omitted). Rather, "it is the effect of the prosecutor's failure to correct false testimony that is the crucial inquiry for due process purposes." *Id.* (quotation marks and citation omitted). "The focus must be on the fairness of the trial, not on the prosecutor's or the court's culpability." *Schrauben*, 314 Mich App at 189 (quotation marks and citation omitted). " 'If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Id.* at 187 (quotation marks and citation omitted).

We find no error warranting reversal. At the outset, defendant does not explain how the prosecution knowingly presented the alleged false testimony, nor is it clear from the record that the prosecution actually knew that Clark's testimony was false. As pointed out by the prosecution, Clark testified to his own personal belief of what he pled to during the child protective proceedings. Although Clark's belief may have been mistaken, nothing in the record indicates that the prosecution knew precisely what Clark pled to during the child protective proceedings to establish that the prosecution knowingly elicited perjured testimony.

Moreover, defendant has not demonstrated a reasonable likelihood that the testimony could have affected the judgment of the jury. In support of defendant's proposed defense of duress, defense counsel called Clark as a witness and pursued the line of questioning regarding the prior child protective proceedings to substantiate defendant's testimony that she suspected and feared that the child was being abused while in Clark's care. While Clark's alleged false testimony may have incorrectly implied that the prior child protective proceedings against him concerned his failure to protect the child while in defendant's care, potentially casting doubt on defendant's testimony regarding her fear that the child was being abused by Clark, this was not material to the issue whether she committed the offense of eavesdropping. Although Clark's conduct toward the child may have been relevant to whether she acted under duress, the trial court correctly declined to instruct the jury on duress because the evidence did not support the defense, and thus, it was not a central issue for the jury's determination. Accordingly, Clark's potentially false and misleading testimony was not material to the jury's determination, and this, could not have affected the jury's verdict. On this record, even if Clark's testimony was perjured, we cannot conclude that defendant has established reversible error on the basis of Clark's alleged false testimony. *Schrauben*, 314 Mich App at 189 (stating that it is only when the tainted evidence is material to defendant's guilt that the conviction will be reversed and a new trial ordered).

*Schrauben,* 314 Mich App 181, 187; 886 NW2d 173 (2016). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). Further, "[a] due process violation presents a constitutional question that this Court reviews de novo." *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015).

Further, the prosecutor's argument here did not impermissibly reinforce Clark's false, mistaken, or inaccurate testimony. A prosecutor's capitalizing on false testimony is "of particular concern because it reinforce[s] the deception of the use of false testimony and thereby contribute[s] to the deprivation of due process." *Smith*, 498 Mich at 476 (quotation marks and citation omitted). Clark admitted that in 2015, a petition was filed to terminate his parental rights to the child. Defendant testified that in 2015, after a visit with Clark, the child was found with amphetamines in his system. She stated that she did not give the child amphetamines. From this testimony, along with defendant's testimony that she feared that Clark was abusing the child, the jury could reasonably infer that Clark had deliberately poisoned/abused the child. Yet, Clark pled no contest to his failure to protect the child after the child was found with amphetamines in his system following a visit in his home. The challenged argument by the prosecutor merely implied that Clark did not "poison" his son because, if he had done so, his parental rights would have been terminated. This was proper argument based on a reasonable inference from the testimony. "Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001).

The prosecutor did not impermissibly emphasize the alleged false testimony that Clark pled to a failure to protect the child while in defendant's care by arguing that defendant's conduct led to the child protective proceedings, nor did he exploit that testimony to convey a misimpression of Clark's involvement in the child custody proceedings. Finally, to the extent defendant alleges that the prosecutor's argument could be construed as capitalizing on Clark's false or misleading testimony by creating the false impression that defendant engaged in abusive acts against her son, given that the issue was not central to this case, defendant has not demonstrated a reasonable likelihood that the challenged testimony affected the judgment of the jury.

Accordingly, we find no abuse of discretion in the court's denial of defendant's motion for a new trial based on the alleged perjured testimony. Defendant failed to demonstrate a reasonable likelihood that the testimony was knowingly false and that it affected the judgement of the jury.

## V. ADMISSION OF PRIOR TESTIMONY

Defendant argues that the trial court erred in allowing as substantive evidence, the admission of the prior testimony she gave at the custody proceeding, where she admitted that she directed a tailor to put a recording device in the child's jacket. She claims that her prior testimony was obtained in violation of her Fifth Amendment right against self-incrimination, and thus, should not have been admitted in her criminal trial. We disagree.[5]

Both the federal and state Constitutions guarantee the right against self-incrimination. US Const V and XIV; Const 1963, art 1, § 17. "The privilege against self-incrimination not only

---

[5] "We review a trial court's decision to admit evidence for abuse of discretion." *People v Seals*, 285 Mich App 1, 4-5; 776 NW2d 314 (2009).

permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also permits him not to answer official questions put to him in any other proceedings, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *In re MU*, 264 Mich App 270, 283 n 5; 690 NW2d 495 (2004). Thus, "[t]he privilege against self-incrimination applies to a civil proceeding at which evidence is sought which might subject the witness to criminal prosecution." *In re Stricklin*, 148 Mich App 659, 664; 384 NW2d 833 (1986). "[T]he privilege against compelled self-incrimination can be asserted in any proceeding and it protects against any disclosures that a witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used . . . ." *People v Seals*, 285 Mich App 1, 9; 776 NW2d 314 (2009). Testimony "having even a possible tendency to incriminate is protected against compelled disclosure." *People v Lawton*, 196 Mich App 341, 346; 492 NW2d 810 (1992).

At the outset, we agree that defendant's testimony during the prior custody proceeding—that she directed a tailor to place a recording device on the child's jacket—was incriminating because it tended to implicate defendant for eavesdropping, MCL 750.539c. Indeed, it was this testimony that led to her prosecution. Accordingly, defendant was entitled to assert her Fifth Amendment right against self-incrimination during the custody proceeding in regards to the questions tending to incriminate her. *Lawton*, 196 Mich App at 346.

We disagree, however, with defendant's claim that her prior testimony was involuntarily obtained in violation of her Fifth Amendment right against self-incrimination because she was not advised of that right before giving her testimony. Defendant does not argue on appeal that she asserted her Fifth Amendment right during the prior proceeding nor does the record reflect that she did. The court does not generally have an affirmative duty to *sua sponte* inform a defendant, who was represented by counsel, of the privilege. *People v Ewing*, 99 Mich App 110, 113-114; 297 NW2d 628 (1980). Instead, "[t]he right to be free from compelled self-incrimination is not self-executing" and must be invoked to claim it. *People v Watkins*, 468 Mich 233, 240; 661 NW2d 553 (2003). Accordingly, to invoke the privilege against self-incrimination, an individual must raise his constitutional privilege or object to answering questions tending to incriminate him. *People v Parsons*, 142 Mich App 751, 762; 371 NW2d 440 (1985) (citations omitted).

A portion of the custody hearing transcript was read into evidence during defendant's trial. The transcript shows that defendant was represented by counsel. The transcript also established that after defendant testified that she had directed somebody she knew to put the device in the child's jacket, Clark's counsel asked defendant a follow-up question regarding who put the device in the child's jacket, to which she responded, "I'm not at liberty to say." Clark's counsel then stated, "Well, you have to say," at which point, defendant's counsel objected. Her counsel, however, did not object on the basis that defendant should not answer the question because she may potentially incriminate herself or that she was invoking her privilege; rather, counsel objected on the ground that he had not heard what was on the recorder. We do not believe that defendant's response, "I'm not at liberty to say," amounts to an assertion of her right against self-incrimination. Her statement did not state, or imply, that she was refusing to answer the question for fear of incriminating herself; rather, it indicates that she was protecting some third party, whom she had directed to hide the recorder in the child's clothes.

-9-

We also conclude that defendant's testimony was not compelled within the meaning of the Fifth Amendment. "It is well established that a defendant's testimony in a former unrelated proceeding is admissible as substantive evidence, absent an indication that the prior testimony was given under compulsion." *Seals*, 285 Mich App at 6. "This result is consistent with the evidentiary rule that statements or admissions by an accused, either before or after the commission of a crime or before or after his arrest, are admissible if they are voluntary." *Id.*; MRE 801(d)(2)(A) (admissions by a party-opponent are not hearsay). Thus, to exclude the testimony from her criminal trial, defendant must demonstrate that her prior testimony was compelled within the meaning of the Fifth Amendment, thereby making the testimony involuntary. *Seals*, 285 Mich App at 7-9.

When defendant gave the incriminating testimony, she was not testifying as a criminal suspect or a potential defendant, but as a witness in a court hearing involving a motion to enforce parenting time. She had not been arrested, charged, or accused of a crime at the time the testimony was taken. Thus, defendant was not entitled to advice in regards to the Fifth Amendment right against self-incrimination generally afforded criminal suspects, and the lack of advice, in and of itself, does not render her incriminating testimony involuntary or compelled. "[T]he general obligation to appear and answer questions truthfully does not convert otherwise voluntary statements into compelled statements." *People v Hoffman*, 205 Mich App 1, 10; 518 NW2d 817 (1994). Further, we hold that the trial court did not violate defendant's right to self-incrimination when it directed defendant to answer the question. This is because defendant had not asserted her Fifth Amendment right against self-incrimination. *Id.* (stating that that a witness is compelled for Fifth Amendment purposes where the witness is required to answer over a valid claim of privilege). Because there is no indication that defendant gave the prior testimony under compulsion, the testimony was properly admissible as substantive evidence.

Defendant further argues that the trial court erred in admitting her prior testimony in its entirety without redacting the attorney's questions because they constituted hearsay and relayed false information. Specifically, defendant argues that when the transcript of the custody proceeding was read into the record, the jury heard the following exchange:

> [*Prosecutor*]. Sir, do you remember, was Mr. Stacey your attorney, Sir?
>
> [*Clark*]. Yes, sir
>
> [*Prosecutor*]. Do you remember him asking: "So, is this—this device—is this your son's shoe?" And her response was: "Yes." Do you recall that?
>
> [*Clark*]. Yes.
>
> [*Prosecutor*]. "Do you know how this got there?" Her response was: "No." Do you recall that?
>
> [*Clark*]. Yes, I do.
>
> [*Prosecutor*]. Question: "Do you know how this got there?" Her response was: "No." Do you recall that?

[*Clark*].  Yes, I do.

[*Prosecutor*].  Question: "Okay.  Is this your son's jacket?"  Her response was: "Yes."  Do you recall that?

[*Clark*].  Yes.

[*Prosecutor*].  Question: "And do you know how this got in it?"  And she responded: "No."  Do you remember that?

[*Clark*].  Yes, sir.

[*Prosecutor*].  Okay.  Question: "And this is a recording device?"  Answer: "He's come home with all his stuff cut open."  Do you recall that?

[*Clark*].  Yes.

[*Prosecutor*].  Question: "So if your voice is on this USB port, and you're talking about putting in, doing it, and your counsel has a copy of the disk, and you don't know how a voice—you don't know how your voice on it [sic]?"  Answer: "Yes.  That material, right there?"  Do you recall that?

[*Clark*].  Yes.

[*Prosecutor*].  And her answer was: "Yeah."  Question—or, I'm sorry, answer: "Inside that black—"

[*Defense counsel*].  (Interposing)  I'm gonna object.  He just mixed up the lines, to make it –

* * *

[*Prosecutor*].  It says: "That—that material, right there?"  And, question: "Yeah."  Answer: "Inside that black jacket you showed me?"  Question: "Yeah." Answer: "No, I did not put it inside that black jacket."

* * *

[*Prosecutor*].  Continuing on, question: "So, you don't know how you're boy's talking got on it?"  Answer: "No, but I did not put it inside that black jacket."  Question: "Did anyone you knew put it there?"  Answer: "Nobody I knew put it there."  That was a question [sic].  Question: "Did—did anyone put— if you did not put it there, was it put in there at anyone's—at your direction?"  Answer: "Yes, it was somebody I knew."  Does this sound familiar?

[*Clark*].  Yes, sir, I remember.

Defendant contends that the *questions* regarding her voice and the child's voice on the USB port were false because they contradicted the testimony that the voices in the tape were not discernible. We disagree.

We agree that the challenged questions constitute out-of-court statements that do not fall under any hearsay exception, and thus, it would be improper to admit them for the truth of the matter asserted. *People v Douglas*, 496 Mich 557, 584; 852 NW2d 587 (2014). However, we hold that the questions were properly admitted to provide context to defendant's answers and statements during the proceedings, which were properly admitted as non-hearsay admissions of party-opponent. MCR 801(d)(2)(a). If the questions had been redacted, defendant's yes and no answers would clearly lack context, and thus the questions could not have easily been omitted without harming the value of defendant's answers. Furthermore, any danger of unfair prejudice, that the jury would take the questions for their truth, was minimized in this case by the investigating detective's testimony that he only heard background noise and some voices, but that the voices or the content were not discernable. On this record, defendant failed to establish plain error affecting her substantial rights, i.e., that any error in admitting the questions for their contextual value amounted to outcome determinative error.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises several instances where she alleges her counsel rendered ineffective assistance.[6]

A criminal defendant has the fundamental right to effective assistance of counsel. *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich App at 190. "To establish that a defendant's trial counsel was ineffective, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*.

Defendant first claims that her trial counsel rendered ineffective assistance by failing to prepare and present an adequate defense of duress. Specifically, defendant argues that her trial counsel should have made further investigation and more fully developed her defense of duress. Trial counsel's "[f]ailure to make a reasonable investigation can constitute ineffective assistance of counsel." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). Defendant argues that her trial counsel should have presented additional evidence of Clark's past abusive conduct and expert opinion on domestic abuse victims. However, as discussed above, this

---

[6] "The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *Schrauben*, 314 Mich App at 189 (quotation marks and citation omitted). However, because an evidentiary hearing regarding her claim was not held, review is limited to mistakes apparent from the record. *People v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2001).

additional evidence would not have entitled defendant to a duress instruction. The fact remains that concealing a recording device on the child to record possible abuse would have collected information to prevent future harm, but committing a criminal act to avoid the threat of future injury or harm is not sufficient to support a defense of duress. Accordingly, defendant failed to demonstrate a reasonable probability that but for her counsel's failure to present the proposed evidence regarding Clark's past abuse, the result of the proceedings would have been different.

Defendant next argues that her counsel rendered ineffective assistance by failing to object to the testimony regarding the content of the audio files obtained from the recording device when the actual files were not admitted in violation of the best evidence rule,[7] MRE 1002.[8] After defense counsel placed the content of the recordings in issue during cross-examination of the detective, the prosecution attempted to present the disc of the recordings on redirect examination, but defense counsel objected to its admission. Defense counsel then used the lack of the recordings to argue that there was insufficient evidence that a private conversation of Clark and the child was recorded. On this record, it is apparent that this is an issue of trial strategy on the part of defense counsel and "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Furthermore, defendant does not explain how the result of the proceedings would have differed had her counsel objected to the officer's testimony and demanded production of the actual audio files, which the prosecutor presented for admission on redirect examination.

Defendant also contends that her trial counsel was ineffective by failing to object to the prosecutor's closing argument that if Clark had poisoned the child, he would not still have his parental rights. As discussed, the prosecution's argument fairly commented on the evidence and was responsive to the inference from the evidence that Clark abused his son. "[A] prosecutor is given great latitude to argue the evidence and all inferences relating to his theory of the case." *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004). Thus, any objection by defense counsel would have been futile. "Counsel is not ineffective for failing to make a futile objection." *Id.*at 457. Nevertheless, any prejudice from the prosecutor's comments was alleviated by the trial court's instruction that the comments of counsel are not evidence.

Finally, defendant argues that her trial counsel failed to prove that Clark perjured himself when he testified that he pled to a failure to protect the child when the child was in defendant's care. However, our review of the record reveals that defense counsel was not ineffective in this regard. When Clark provided the alleged false testimony during the prosecution's cross-examination, defense counsel immediately objected, asserting "that is absolutely contrary to what the record says." The court did not allow defense counsel to present the record. Defense counsel also attempted to elicit evidence of the allegations forming the basis of the petition to

---

[7] We find that defendant waived any argument that the audio files retrieved from the recording device should have been admitted under the best evidence rule.

[8] MRE 1002 provides: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute."

terminate Clark's parental rights, but the court would not allow him to answer based on hearsay. On this record, where defense counsel attempted to reveal the inaccurate testimony with the record, but the court would not allow him to do so, defendant failed to demonstrate that counsel's performance fell below an objective standard of reasonableness.

We conclude that counsel did not render ineffective assistance.

## VII. CUMULATIVE ERROR

Defendant argues that her conviction should be reversed based on the cumulative effect of the errors, which she asserts deprived her of a fair trial. We disagree.[9]

"The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal . . . ." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). However, only actual errors are combined to determine the cumulative effect. *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). Because we found that there were no actual errors, defendant's argument for reversal based on the cumulative effect of the alleged errors necessarily fails.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly

---

[9] We review a claim regarding the cumulative effect of errors to determine if the combination of the alleged errors denied the defendant a fair trial. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).